IN THE MATTER OF APPLICATION OF THE OKLAHOMA DEVELOPMENT FINANCE AUTHORITY
2022 OK 47
Case Number: 120274
Decided: 05/24/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 47, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA DEVELOPMENT FINANCE AUTHORITY FOR APPROVAL OF NOT TO EXCEED $1,450,000,000 RATEPAYER-BACKED BONDS (OKLAHOMA NATURAL GAS COMPANY), SERIES 2022 (FEDERALLY TAXABLE)

ORIGINAL ACTION TO APPROVE RATEPAYER-BACKED BONDS

¶0 The Oklahoma Development Finance Authority requests that this Court assume original jurisdiction and approve the issuance of ratepayer-backed bonds pursuant to the February 2021 Regulated Utility Consumer Protection Act, 74 O.S.2021, ch. 110A-1, §§ 9070-9081. The Oklahoma Development Finance Authority seeks to issue bonds to cover the debt incurred by Oklahoma Natural Gas Company from unprecedented fuel costs during the February 2021 winter weather event. Oklahoma Natural Gas Company's ratepayers would then fund the bond payments through a monthly charge. The ratepayer-backed bonds would allow customers to pay their utility bills at a lower amount over a longer period of time. Protestants challenged the proposed bonds on several grounds, focusing on the constitutionality of the bonds. We assume original jurisdiction and hold the ratepayer-backed bonds were properly authorized under the Act and are constitutional.

ORIGINAL JURISDICTION ASSUMED;
PROPOSED BOND ISSUE APPROVED.

Jered T. Davidson, The Public Finance Law Group, PLLC, Oklahoma City Oklahoma, for The Oklahoma Development Finance Authority.

Porter Davis, Oklahoma City, Oklahoma, Pro Se Opponent.

Mike Reynolds, Oklahoma City, Oklahoma, Pro Se Opponent.

Dr. James Michael Ritze, Oklahoma City, Oklahoma, Pro Se Opponent.

PER CURIAM:

¶1 The matter before us is an original proceeding brought pursuant to the February 2021 Regulated Utility Consumer Protection Act (Act), specifically 74 O.S.2021, ch. 110A-1, § 9079, https://govt.westlaw.com/okjc (in ch. 110A-1, follow hyperlink titled, "February 2021 Regulated Utility Consumer Protection Act"), which authorized the Oklahoma Development Finance Authority (ODFA) to file an application with this Court seeking approval of ratepayer-backed bonds to finance the recovery of the fuel costs incurred by Oklahoma Natural Gas Company (ONG) during the February 2021 weather event. We assume original jurisdiction and approve the bonds.

BACKGROUND AND PROCEDURAL HISTORY

¶2 In February 2021, the State of Oklahoma endured record cold temperatures. The severe cold weather resulted in a shortage of the natural gas supply due to incredibly high demand and the cold weather preventing the gas's extraction and transportation, which, in turn, caused extraordinary natural gas costs for regulated utilities operating in Oklahoma. The cost of natural gas for the Oklahoma utilities during the two weeks of extreme cold exceeded their entire fuel acquisition cost in 2020. Specifically as to ONG, the companies that ONG had contracts with to provide natural gas invoked their force majeure clauses as those companies could not extract or provide natural gas to ONG. This resulted in ONG having to use about 50% of its natural gas held in storage. ONG was also forced to buy natural gas at market cost, with gas prices rising from $2.00 to almost $1,200.

¶3 As a result, the Oklahoma Legislature enacted the Act, 74 O.S.2021, ch. 110A-1, §§ 9070-9081, to provide financing options to lower the economic impact on the utility customers. Most Oklahomans could not afford a one-time, cost recovery payment imposed by the utilities or a monthly payment under the utilities' traditional financing method. The Legislature provided a new mechanism to spread the fuel cost recovery over a longer period at a lower interest rate to minimize the financial impact on utility customers. The Act authorized the Oklahoma Corporation Commission (Commission) to approve the utilities' recovery of prudently incurred costs through securitization, which is a financial tool creating a property right to revenues collected by regulated utilities from customers under an irrevocable and nonbypassable mechanism. 74 O.S.2021, ch. 110A-1, § 9072(10), https://govt.westlaw.com/okjc. The property right is then sold and used as security for the repayment of the ratepayer-backed bonds. Id.

¶4 On April 29, 2021, ONG applied with the Commission to determine that the $1,284,101,405 in fuel costs ONG incurred during the February 2021 winter storm were prudent. ONG, the Commission's Public Utility Division, the Oklahoma Attorney General's office, and Walmart entered into settlement negotiations regarding ONG's application. All the parties, except for Walmart and the Attorney General, entered into a Settlement Agreement that found ONG prudently incurred costs during the winter storm amounting to $1,284,101,405.

¶5 On November 22, 2021, after taking public comment, an Administrative Law Judge (ALJ) for the Commission held a hearing on the Settlement Agreement. The hearing consisted of the parties presenting evidence in support of the Agreement. No party objected to the Settlement Agreement, and all the parties acknowledged or agreed that utilizing the securitization method provided the most favorable savings to the ratepayers. The ALJ then issued a report approving the Settlement Agreement.

¶6 On January 20, 2022 (and continued to January 25, 2022), the Commission held a regular meeting regarding the ALJ's report and issued the Final Financing Order. The Order approved $1,284,101,405 in fuel costs and approximately $73,000,000 in financing costs and interest, totaling $1,357,300,000 to be collected through securitization of that debt.

¶7 ODFA filed an application with this Court to assume original jurisdiction for approval of the ratepayer-backed bonds, per the provisions of 74 O.S.2021, ch. 110A-1, § 9079, https://govt.westlaw.com/okjc. Three Protestants filed in response to the application challenging the bonds on several grounds, but focusing primarily on the constitutionality of the bonds. One Protestant also contends that the Final Financing Order violates the Open Meetings Act, and the Court should not validate bonds from an invalid financing order. The questions before this Court are (1) whether the ratepayer-backed bonds were properly authorized under the Act and (2) whether the bonds are constitutional.

STANDARD OF REVIEW

¶8 The Court has long recognized that its obligation in reviewing bonds is to determine whether the bonds facially violate the law and to examine the legal authority presented by protestants. In re Application of Okla. Turnpike Auth., 2018 OK 88431 P.3d 59In re Application of Okla. Capitol Improvement Auth., 1998 OK 25, ¶ 8, 958 P.2d 759, 763. If two possible interpretations of a statute are possible, only one of which would render it unconstitutional, a court is bound to give the statute an interpretation that will render it constitutional unless constitutional infirmity is shown beyond a reasonable doubt. Fent v. Okla. Capitol Improvement Auth., 1999 OK 64984 P.2d 200

DISCUSSION

¶9 The Legislature conferred upon the Court "exclusive original jurisdiction" to hear and determine ODFA's application. 74 O.S.2021, ch. 110A-1, § 9079, https://govt.westlaw.com/okjc. We recently answered similar legal questions in In the Matter of the Application of the Oklahoma Development Finance Authority for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Oklahoma Gas and Electric Company), Series 2022 (Federally Taxable), which involved the use of securitization of bonds to recoup Oklahoma Gas and Electric Company's costs for the 2021 February weather event. We held that the ratepayer-backed bonds for Oklahoma Gas and Electric Company were properly authorized and constitutional. 2022 OK 41See Okla. Sup. Ct. Rule 1.201.

¶10 For the reasons stated in our prior decision, the ratepayer-backed bonds for ONG conform to the Act as ONG's Final Financing Order also sets out the parameters of the bonds' issuance, terms, conditions, requirements, and interest. 74 O.S.2021, ch. 110A-1, § 9074(A), https://govt.westlaw.com/okjc. The process set out in the Act was followed, and the bonds appear facially valid. Protestants in this matter provide no authority to the contrary.

¶11 These ratepayer-backed bonds are also constitutional. In re Application of Okla. Dev. Fin. Auth. for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Okla. Gas and Elec. Co.), Series 2022 (Federally Taxable), 2022 OK 41stare decisis demands their approval. In re Application of Okla. Capitol Improvement Auth., 1998 OK 25, ¶¶ 45-46, 958 P.2d at 773.

¶12 We emphasize that the use of securitization of bonds to recoup the costs for the 2021 February weather event was a legislative fiscal policy decision. This Court is not to question whether the Act is "wise or unwise, whether it is based on sound economic theory or whether it is the best means to achieve the desired result." In re Application of Okla. Capitol Improvement, 1998 OK 25In re Application of Okla. Dev. Fin. Auth. for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Okla. Gas & Elec. Co.), Series 2022 (Federally Taxable), 2022 OK 41

¶13 Protestants raise issues regarding the filed-rate doctrineSee State ex rel. Comm'rs Land Office v. Corp. Comm'n, 1979 OK 16590 P.2d 674

¶14 Protestant Ritze contends that the Commission violated the Open Meetings Act by failing to post an agenda for its January 25, 2022 meeting when it approved the Financing Order for ONG's bonds. Noting that any willful action taken in violation of the Open Meetings Act is invalid, Protestant Ritze asks the Court to not validate these bonds because the Financing Order is invalid. 25 O.S.2021, ch. 8, § 313

In the event any meeting is to be continued or reconvened, public notice of such action including date, time and place of the continued meeting, shall be given by announcement at the original meeting. Only matters appearing on the agenda of the meeting which is continued may be discussed at the continued or reconvened meeting.

25 O.S.2021, ch. 8, § 311

That the matter item [ONG securitization] for continuing and we will note, it will be continued to January 25 Tuesday at 2:30. So is there any new business.

¶15 On January 25, 2022, at 2:30 p.m., the Commission reconvened the continued January 20th regular meeting to finish the discussion regarding ONG securitization and vote on the Final Financing Order. According to § 311(A)(11), the Commission properly continued its meeting by providing a public announcement for the continued meeting with the date, time, and place and only discussed matters which were on the January 20th meeting agenda. There was no violation of the Open Meetings Act. See 25 O.S.2021, ch. 8, § 313Fraternal Order of Police v. City of Norman, 2021 OK 20489 P.3d 20

 

CONCLUSION

¶16 The February 2021 Regulated Utility Consumer Protection Act provides that if the Court is satisfied that the obligations have been properly authorized by the Act and the Oklahoma Constitution and the bonds constitute valid obligations, the Court shall render its written opinion approving the ratepayer-backed bonds. 74 O.S.2021, ch. 110A-1, § 9079, https://govt.westlaw.com/okjc. Accordingly, we approve the ratepayer-backed bonds. Any petition for rehearing regarding this matter shall be filed within twenty (20) days of the date of this opinion.

ORIGINAL JURISDICTION ASSUMED;
PROPOSED BOND ISSUE APPROVED.

Darby, C.J., Kane, V.C.J., Kauger, Winchester, Edmondson, and Gurich, J.J., concur.

Rowe, J. (by separate writing), concurs in result.

Combs and Kuehn, J.J., recused.

FOOTNOTES

In the Matter of the Application of the Oklahoma Development Finance Authority for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Oklahoma Gas and Electric Company), Series 2022 (Federally Taxable), 2022 OK 41

In the Matter of the Application of the Oklahoma Development Finance Authority for Approval of Not to Exceed $800,000,000 Ratepayer-Backed Bonds (Oklahoma Gas and Electric Company), Series 2022 (Federally Taxable), 2022 OK 41

 
 
 
 Description of Issue
 
 
 FCA* (w/o reg. asset)**
 
 
 TRADITIONAL
 
 
 SECURITIZATION
 
 
 
 
 Amortization Period
 
 
 1 month
 
 
 25 years
 
 
 25 years
 
 
 
 
 Interest Rate
 
 
 0%
 
 
 8.90%
 
 
 2.35%
 
 
 
 
 Principal Amount Owed
 
 
 $1,284,101,405
 
 
 $1,284,101,405
 
 
 $1,333,369,895
 
 
 
 
 Loan Financing Fee
 
 
 $23,930,105
 
 
 $23,930,105
 
 
 $23,930,105
 
 
 
 
 TOTAL Principal plus Loan Financing Fee
 
 
 $1,308,031,510
 
 
 $1,308,031,510
 
 
 $1,357,300,000
 
 
 
 
 Interest + Expenses
 
 
 $0
 
 
 $1,676,409,607
 
 
 $414,831,599
 
 
 
 
 Total Amount (Principal + Interest)
 
 
 $1,308,031,510
 
 
 $2,984,441,117
 
 
 $1,772,131,599
 
 
 
 
 Monthly Impact to Average Residential Customer
 
 
 $1,363.00
 
 
 $15.32
 
 
 $7.82
 
 
 

*FCA = Fuel Cost Adjustment

** Regulatory Asset = A holding place from storm costs, which are carried on the utility's books.

See Oklahoma Corporation Commission, News, Commission: "No" to ONG Termination Fee; "Yes" to Fuel Cost Recovery, January 25, 2022, available at https://oklahoma.gov/occ/news/news-feed/2022/commission-says-no-to-ong-termination-fee-yes-to-fuel-cost-recovery.html.

Satellite Sys., Inc. v. Birch Telecom of Okla., Inc., 2002 OK 6151 P.3d 585

Watch the recording, Commission meeting January 20, 2022, 9:30 a.m., Oklahoma Corporation Commission, 5:24, available at https://oklahoma.gov/occ/public-meetings/events/2022/january/commission-meeting-january-20-2022.html.

 

 

ROWE, J., concurring in result:

¶1 I concur in the Court's judgment insofar as I do not recognize any clear constitutional or legal infirmities in Petitioner's application. I write separately to address once more a number of concerns I have with the nature of these proceedings.

¶2 This is now the third time in a matter of weeks that this Court has been prompted by virtue of legislative enactments to preemptively "approve" the issuance of billions of dollars in government bonds.

¶3 The law in question here, the February 2021 Regulated Utility Consumer Protection Act, also narrowly circumscribes our authority in approving the bonds.

¶4 Despite some seemingly legitimate objections raised by the Protestors, this Court has long recognized that our obligation in reviewing bonds is to determine whether they facially violate the law. In re Application of Okla. Turnpike Auth., 2018 OK 88431 P.3d 59

¶5 Once again, I find it hard to reconcile that our statutorily-mandated pre-approval of the bonds in this matter--which cannot touch on substantive questions raised by the Protestors--serves to foreclose the right of these individuals and others in the future to challenge the legitimacy of the bonds or to raise any other valid legal issue. These consequences should not be taken lightly when the effect of our ruling will be to irrevocably saddle many Oklahomans with a significant financial obligation for the next twenty-five years--and to establish additional precedent for future bond approvals.

¶6 The February 2021 Regulated Utility Consumer Protection Act, which established the procedure forming the basis of this matter, was enacted by the Legislature and signed into law by the Governor in February 2021. Despite my misgivings, our statutory mandate under the Act is limited to ruling upon the constitutionality of the policy, not to supplant the policy with our own.

FOOTNOTES

See In re Application of the Okla. Capitol Improvement Auth. For Approval of $200,000,000 State Highways Capital Improvement Notes, 2022 OK 31In re Application of Okla. Dev. Fin. Auth. For Approval of $800,000,000 Ratepayer-Backed Bonds (Okla. Gas & Elec. Co), 2022 OK 41

See In re App. of Okla. Dev. Fin. Auth. for Approval of $725,000,000 Ratepayer-Backed Bonds (Pub. Serv. Co. of Okla.), No. 120,275 (Okla. Sup. Ct. 2022); In re App. of Okla. Dev. Fin. Auth. for Approval of $95,000,000 Ratepayer-Backed Bonds (Summit Utils. Okla), No. 120,276 (Okla. Sup. Ct. 2022).

See H.B. 2900, 58th Leg, 1st Sess. (Okla. 2021); Governor Stitt Signs FY 2022 State Budget Package into Law, https://oklahoma.gov/governor/newsroom/newsroom/2021/may/governor-stitt-signs-fy-2022-state-budget-package-into-law.html?msclkid=88d451f9c7df11eca4a990d86c0868cc (last modified Aug. 18, 2021).

If the Court shall be satisfied that the bonds or any portions thereof have been properly authorized in accordance with this act and the Constitution of the State of Oklahoma, and that when issued they will constitute valid obligations in accordance with their terms, the Court shall render its written opinion approving the ratepayer-backed bonds and shall fix the time within which a petition for rehearing may be filed.

The decision of the Court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, the state, its officers, agents and instrumentalities, and all other persons, and thereafter the bonds so approved and the revenues pledged to their payment shall be incontestable in any court in this state.